UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
Michael David Highfill,         )     Case No. 04-11808C-7G
                                )
          Debtor.               )
_____ )
                                )
Karen Grace Randle,             )
                                )
          Plaintiff,            )
                                )
v.                              )     Adversary No. 04-2102
                                )
Michael David Highfill,         )
                                )
          Defendant.            )
                                )

<u>MEMORANDUM OPINION</u>

This adversary proceeding came before the court for trial on December 6, 2005. John H. Boddie appeared on behalf of the plaintiff and William O. Moseley, Jr. appeared on behalf of the defendant.

MATTER BEFORE THE COURT

This is a dischargeability action in which the plaintiff contends that certain obligations of the defendant under a separation agreement between the plaintiff and the defendant are nondischargeable. Having considered the evidence offered by the parties and the arguments submitted by or on behalf of the parties, the findings and conclusions of the court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure are hereinafter set forth.

JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) which this court may hear and determine.

FACTS

The plaintiff and defendant were married in 1998. No children were born of the marriage, although the plaintiff has two minor children from a previous marriage. After approximately four years of marriage the parties separated in June of 2002. At the time of the separation, a separation agreement was signed. The agreement did not provide for alimony for either party but did address the distribution of marital assets and marital debts.

With respect to the marital debts, the debtor/defendant agreed in paragraph 36 to be solely responsible for certain debts and to indemnify and hold the plaintiff harmless with respect to such debts. The debts covered by this provision include a CCB (now Suntrust) equity line, an account at Fleet Bank (now Bank of America) and an account at Bank One.

Paragraph 37 of the separation agreement deals with the marital home which was acquired during the marriage. According to paragraph 37, there was $34,000.00 of equity in the residence over

and above the first deed of trust and the CCB credit line deed of trust which encumbered the residence.   In exchange for the plaintiff conveying her interest in the residence to the debtor/defendant, he agreed to assume full responsibility for the $18,000.00 equity line owed to CCB and to pay the plaintiff $8,000.00 in one lump sum within 30 days.

The separation agreement was executed by the parties on June 17, 2004.  The plaintiff deeded her interest in the residence to the debtor/defendant on June 19, 2002, and on June 28, 2002, the debtor/defendant gave the plaintiff a check for $8,000.00. However, unbeknownst to the plaintiff, the debtor/defendant had obtained the $8,000.00 required to cover the check by making an $8,000.00 draw on the CCB line of credit.   In fact, the debtor/defendant continued to make periodic draws against the CCB line of credit throughout the remainder of 2002 and by the end of 2002 had made draws totaling $17,225.00.   This additional indebtedness was incurred without the knowledge of the plaintiff and while she remained an obligor on the CCB line of credit.

Although the defendant made sporadic payments on the CCB indebtedness after the execution of the separation agreement, the CCB indebtedness increased to $31,789.63 as a result of the additional draws on the CCB line of credit by the defendant and the additional interest that accrued following the execution of the separation agreement.   The CCB line of credit was secured by a

second deed of trust on the residence. Nevertheless, the CCB indebtedness was left unpaid when the first deed of trust on the residence was foreclosed after the defendant defaulted on the first deed of trust. The defendant also failed to pay $1,761.12 of indebtedness owed to Bank One and $1,568.00 of indebtedness owed to Fleet Bank as he had agreed to do in the separation agreement.

On June 14, 2004, the defendant filed a Chapter 7 case in this court. This adversary proceeding was filed on September 9, 2004. The plaintiff alleges in the complaint that the additional draws on the CCB line of credit by the defendant after the separation agreement was executed constituted fraud and that the defendant's obligation to indemnify her for that indebtedness is nondischargeable pursuant to § 523(a)(2)(A). Alternatively, the plaintiff alleges that the defendant's obligation to pay and hold the plaintiff harmless from the indebtedness owed to CCB, Bank one and Fleet Bank in accordance with the separation agreement gives rise to a nondischargeable debt pursuant to § 523(a)(15).

DISCUSSION

I.  CLAIM UNDER SECTION 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides as follows:

> (a) A discharge granted under section 727, 1141, 1228(a), 1228(b), or 1328(b) of Title 11 does not discharge an individual debtor from any debt—
>
> *    *    *
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

- 4 -

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A).

In order to establish the nondischargeability of a debt under § 523(a)(2)(A), a creditor must prove the following five elements: 1) that the debtor made a representation; 2) that the debtor knew the representation was false at the time it was made; 3) that the debtor intended to deceive the creditor at the time the debtor received the money, services or property; 4) that the creditor relied on the representation; and 5) that the creditor sustained a loss as a result of that reliance. John J. O'Connor, CPO, Inc. v. Booker (In re Booker), 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994); Kuper v. Spar (In re Spar), 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994); Rowe v. Showalter (In re Showalter), 86 B.R. 877, 880 (Bankr. W.D. Va. 1988); Lisk v. Criswell (In re Criswell), 52 B.R. 184, 196 (Bankr. E.D. Va. 1985). As the party challenging the dischargeability of an indebtedness, the plaintiff has the burden of establishing each of the foregoing elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

The first of the foregoing elements to be considered is whether there was a representation by the defendant within the meaning of § 523(a)(2)(A). The plaintiff is correct in her contention that the separation agreement contained a representation by the defendant that he would pay the debts list in paragraph 37

- 5 -

of the agreement.  Further analysis is required, however, before reaching a conclusion as to whether the representation made in the agreement satisfies the requirements of § 523(a)(2)(A), since the representation involves a declaration of future intent or a promise of future action, i.e., a representation that payment would be made at an unspecified point in the future.  Such a promise or declaration, standing alone, is insufficient to support a claim under § 523(a)(2)(A) because a promise to perform some act in the future, without more, does not constitute a representation for purposes of § 523(a)(2)(A).  Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992) ("[A] promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached."); James Cape & Sons Co. v. Bowles (In re Bowles), 318 B.R. 129, 144 (Bankr. E.D. Wis. 2004) ("[A] cause of action for fraud does not exist for misrepresentations as to future promises or facts...."); New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez), 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (observing that a check is a promise of future payment and holding debt for NSF check dischargeable absent evidence of present intent not to honor it); Carroll & Sain v. Vernon (In re Vernon), 192 B.R. 16, 171-72 (Bankr. N.D. Ill. 1996) (holding debt for legal fees dischargeable where plaintiff law firm had not demonstrated intent not to pay); Kuper v. Spar (In re Spar), 176 B.R. 321, 327 (Bankr. S.D.N.Y.

- 6 -

1994) ("A promise to perform in the future is insufficient."); Rowe v. Showalter (In re Showalter), 86 B.R. 877, 880 (Bankr. W.D. Va. 1988) ("A mere promise to repay, and nothing more, does not rise to the level of a representation under § 523(a)(2)."). The "representation" must be "one of existing fact" and not "merely an opinion, expectation or declaration of intent." Lisk v. Criswell (In re Criswell), 52 B.R. 184, 196-97 (Bankr. E.D. Va. 1985). See also In re Spar, 176 B.R. at 327; In re Showalter, 86 B.R. at 880.

In order to show that a promise of future action or a declaration of intent constitutes a representation for purposes of § 523(a)(2)(A), the plaintiff must also establish that at the time the promise of future action was made, the debtor had no intention of performing as promised. Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992) (holding debtor's promise to second mortgagee to limit amount of first mortgage to 20% of the value of property so that second mortgagee would be fully secured was a false representation under § 523(a)(2)(A) where debtor had no intention of performing at the time the promise was made); James Cape & Sons Co. v. Bowles (In re Bowles), 318 B.R. 129, 144 (Bankr. E.D. Wis. 2004) (holding promise by debtor-general contractor to place payments to creditor-subcontractor in escrow account pursuant to lock-box arrangement was not actionable under § 523(a)(2)(A) absent evidence of intent not to perform promise); First N. Am. Nat'l Bank v. Widner (In re Widner), 285 B.R. 913, 918 (Bankr. W.D.

Va. 2002) (holding use of a credit card is a promise to pay in the future and debtor's credit card debt was nondischargeable under § 523(a)(2)(A) where debtor did not intend to repay debt at the time she incurred the charges); Kuper v. Spar (In re Spar), 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994) (holding debtor's promise to execute a promissory note in exchange for $100,000.00 loan from creditor-friend was a fraudulent misrepresentation under § 523(a)(2)(A) where debtor never intended to execute the note).

When applied in the present case, the foregoing cases mean that in order to establish a representation of the type required under § 523(a)(2)(A), the plaintiff was required to establish that defendant had no intention of paying the marital debts and holding the plaintiff harmless when he signed the agreement agreeing to do so. In order to carry this burden, however, the plaintiff was not required to produce direct evidence that the defendant did not intend to pay the debts and hold the plaintiff harmless when he promised to do so.

Because direct proof of intent is seldom available, the court in a dischargeability proceeding may infer the debtor's intent or lack of intent from the surrounding facts and circumstances. Mandalay Resort Group v. Miller (In re Miller), 310 B.R. 185, 196 (Bankr. C.D. Cal. 2004); Gadtke v. Bren (In re Bren), 284 B.R. 681 (Bankr. D. Minn. 2002).

Taken as a whole, the evidence was insufficient to establish

- 8 -

that the defendant had no intention of paying the CCB and other debts that he assumed under the separation agreement. The separation agreement did not contain a schedule for the repayment of the assumed debts nor did the agreement specify a date by which the assumed debts had to be paid off. In fact, the defendant serviced the first mortgage and the CCB line of credit and made periodic payments on the other assumed debts for more than two years before the first mortgage was foreclosed and the debtor stopped making any payments on the assumed debts. Absent a showing that the Debtor had no intention of paying, there is no basis for a finding of fraud on the part of the defendant. Accordingly, no relief may be granted under § 523(a)(2)(A) in this proceeding.

II.   CLAIM UNDER SECTION 523(A)(15)

Under § 523(a)(15), a debt not of a kind described in § 523(a)(5) and incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other court order, is not dischargeable unless (a) the debtor lacks the ability to pay the debt from property or disposable income or (b) discharging the debt results in a benefit to the debtor that outweighs the detrimental consequences to the debtor's spouse, former spouse or child.

A.   Burden of proof.

The first matter to be addressed is the burden of proof in an action brought pursuant to § 523(a)(15). The appropriate rule is

- 9 -

one in which the burden of proof shifts.  Initially, the plaintiff must file a timely adversary proceeding and must show a debt incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other qualifying matrimonial order.  If the plaintiff satisfies this burden, the burden of proof then shifts to the defendant/debtor to show inability to pay the marital obligation.  If the debtor can show inability to pay, then the examination stops and the debtor prevails in the dischargeability action.  If the debtor fails to carry the burden regarding ability to pay, a majority of courts have concluded that the debtor then has the burden of showing that the benefits of a discharge for the debtor outweigh the detriment to the plaintiff if a discharge is granted.  See e.g., In re Dexter, 250 B.R. 222, 224 (Bankr. D. Md. 2000); In re Craig, 196 B.R. 305, 308 (Bankr. E.D. Va. 1996).  This court adopts the majority rule and will place the burden of proof upon the debtor both as to debtor's ability to pay as well as to whether the benefits of a discharge for the debtor outweigh the detriment to the plaintiff if a discharge is granted.

> B.  Debt not of a kind described in
>     § 523(a)(5) that is incurred by
>     the debtor in the course of a
>     divorce or separation.

In the present case, the plaintiff relies upon provisions in the separation agreement in which the defendant agreed to be responsible for the indebtedness secured by deeds of trust on the

- 10 -

residence (paragraph 33) and to pay and to indemnify the plaintiff with respect to various debts, including the CCB, Bank One and Fleet debts (paragraphs 36 and 37).  It is undisputed that these provisions create an obligation on the part of the defendant to indemnify the plaintiff with respect to the debts which the defendant failed to pay and that such obligation is one not of the kind described in § 523(a)(5) that was incurred by the defendant in the course of a divorce or separation within the meaning of § 523(a)(15).  Plaintiff's evidence established that the unpaid balance of the obligations covered by the defendant's agreement to indemnify is $35,118.75.

C.  Whether the Debtor has the ability
to pay the § 523(a)(15) obligation.

A majority of courts have concluded that an appropriate test for determining whether a debtor lacks the ability to pay within the meaning of § 523(a)(15) is the "disposable income test" that also applies in chapter 13 cases and is found in § 1325(b) of the Bankruptcy Code.  See e.g., In re Campbell, 198 B.R. 467, 473 (Bankr. D.S.C. 1996).  For purposes of § 1325(b) and § 523(a)(15)(A), disposable income means income received by the debtor that is not reasonably necessary to be expended for the maintenance or support of the debtor or dependents of the debtor and, if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation and

operation of such business.  See In re Hesson, 190 B.R. 229 (Bankr. D. Md. 1995).

The cases are not uniform regarding the appropriate date for determining whether the debtor has the ability to pay the marital debt.  The dates which have been utilized by various courts that have considered the issue include the date of the filing of the case, the date of the filing of the adversary proceeding, and the date of the trial.  The court has concluded that the better rule is for the determination to be made as of the date of the trial and that is the date which will be utilized in the present case.

The determination of the amount, if any, of disposal income that a debtor has available to pay the marital debt is a determination that must be made on a case-by-case basis.  See In re Rushlow, 277 B.R. 216, 221 (Bankr. D. Vt. 2002).  Although a debtor's disposable income is measured as of the time of trial, a determination of a debtor's ability to pay for purposes of § 523(a)(15)(A) does not consist of simply looking at a "snapshot" of his financial abilities at that time.  See In re Huddelston, 194 B.R. 681, 687-88 (Bankr. N.D. Ga. 1996).  Rather, the court should examine the totality of the debtor's financial circumstances.  See In re Cleveland, 198 B.R. 394, 398 (Bankr. N.D. Ga. 1996); In re McGinnis, 194 B.R. 917, 920 (Bankr. N.D. Ala. 1996); In re Smither, 194 B.R. 102, 107 (Bankr. W.D. Ky. 1996) (rather than snapshot, court should consider prospective earning capacity).  The

circumstances that the court should consider include (1) the debtor's disposable income as measured at the time of trial; (2) the presence of more lucrative employment opportunities that might enable the debtor fully to satisfy the divorce-related obligations; (3) the extent to which the debtor's burden of debt will be lessened in the near term; (4) the extent to which the debtor previously has made a good faith effort toward satisfying the debt in question; and (5) the debtor's prospective earning capability.  <u>Cleveland</u>, 198 B.R. at 398; <u>Huddelston</u>, 194 B.R. at 688.  If an examination of these broader considerations reveals an ability to pay the marital obligation, the debtor may not avail himself of the "safe harbor" embodied in § 523(a)(15)(A).  <u>See</u> <u>Cleveland</u>, 198 B.R. at 398.  <u>See also</u> <u>In re Straub</u>, 192 B.R. 522, 528-29 (Bankr. D.N.D. 1996); <u>In re Florio</u>, 187 B.R. 654, 657 (Bankr. W.D. Mo. 1995).

     In the present case, the defendant has a long history of employment in the health care industry as a nurse and was so employed at the time of the hearing.  The debtor's gross monthly salary averages $3,298.00 and his average net monthly salary is $2,385.00.  The defendant lives with a female companion who is employed and pays half of the rent and utilities for their household.  The defendant and his live-in companion have lived together and shared a household for approximately two years during which they have shared expenses and lived as a single economic unit

- 13 -

in what is a continuing romantic relationship.  Under such
circumstances, it is appropriate for the court to consider the
financial contributions of the live-in companion in assessing the
defendant's ability to pay his marital obligations.  See In re
Short, 232 F.3d 1018 (9th Cir. 2000).  According to the defendant,
his share of the rent and utilities is $805.00, consisting of
$550.00 for rent, $125.00 for electricity and heating, $50.00 for
water and sewer, $55.00 for cable TV and internet service and
$25.00 for home maintenance.  Defendant's other monthly expenses
for food, clothing, medical expenses, transportation, etc., total
$1,379.00, for total monthly expenses of $2,184.00, which results
in disposable income of $210.00 per month.  However, the amounts
claimed by the defendant for food ($400.00), medical expenses
($300.00) and transportation ($500.00) were not fully substantiated
and, to the extent of at least $150.00 per month, were not
established by the defendant's evidence as being reasonably
necessary for his support and maintenance.  Thus, for purposes of
§ 523(a)(15), the defendant has total disposable income of $360.00
per month.

        After ascertaining the amount of the debtor's disposable
income, the next step is to determine whether the debtor has a
sufficient amount of disposable income to pay the marital debt
within a reasonable time.  See In re Miller, 247 B.R. 412, 415
(Bankr. N.D. Ohio 2000); In re Windom, 207 B.R. 1017, 1022 (Bankr.

- 14 -

W.D. Tenn. 1997).  Even if the defendant had no unexpected expenses
and were able to commit his entire disposable income over a period
of time, with disposable income of $360.00 per month, it would take
the defendant more than ten years to repay his obligation to the
plaintiff taking into account the interest that would accrue while
the defendant made period payments.[1]  If unexpected expenses such
as medical expenses or additional transportation costs arose, it
would take even longer to repay the obligation.  Under these
circumstances, the court concludes that the defendant does not have
the ability to repay the entire obligation within a reasonable
period of time.  However, it is clear that the defendant has the
ability to repay a portion of the indebtedness.  Although the
courts are divided on the issue of whether a debt may be partially
discharged under § 523(a)(15), this court is persuaded that an "all
or nothing" approach is not mandated by § 523(a)(15) and that
bankruptcy courts have the authority to find debts partially
dischargeable under § 523(a)(15).  See In re Rushlow, 277 B.R. 216
(Bankr. D. Vt. 2002); In re Baker, 274 B.R. 176 (Bankr. D. S.C.
2000); In re Miller, 247 B.R. 412 (Bankr. N.D. Ohio 2000).  Based
upon the defendant's disposable income and a reasonable repayment
period of five years, the court finds that the defendant has the

---

[1]Under 18 U.S.C. § 1961, interest accrues from the date that a
money judgment is entered in the bankruptcy court.

- 15 -

ability to repay $19,350.00 of the marital indebtedness involved in this case and that the balance of the indebtedness owed to the plaintiff is dischargeable based upon the defendant's inability to pay such balance.

> D.   Whether the benefit of a discharge
>      to defendant outweighs the resulting
>      detriment to plaintiff.

Having concluded that the defendant does have the ability to pay a portion of the debt, it becomes necessary to apply the test contained in § 523(a)(15)(B).  Section 523(a)(15)(B) embodies a balancing test in which the court weighs the respective interest of the debtor in a fresh start against the interest of the debtor's spouse.  If the benefit of a discharge to the debtor outweighs the resulting detriment that will be suffered by the spouse, then the indebtedness is dischargeable.  This balancing test must be applied on a case-by-case basis and involves an examination of the totality of the circumstances involved in each case.  In applying the balancing test, the court should review the financial status of the debtor and the spouse and compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the former spouse and children would suffer as a result of the debtor's discharge.  If, after making this analysis, the debtor's standard of living would be greater than or approximately equal to the spouse's standard of living if

- 16 -

the debt is not discharged, then the debt should be nondischargeable under § 523(a)(15)(B). On the other hand, if the debtor's standard of living will fall materially below the spouse's standard of living if the debt is not discharged, then the debt should be discharged under § 523(a)(15)(B). In re Molino, 225 B.R. 904 (6th Cir. B.A.P. 1998). The factors that may be considered in making this analysis include the following: (1) the amount of debt involved, including all payment terms; (2) the current incomes of the debtor, the objecting spouse and their respective spouses; (3) the current expenses of the debtor, the objecting spouse and their respective spouses; (4) the current assets, including exempt assets of the debtor, the objecting spouse and their respective spouses; (5) the current liabilities, excluding those discharged by the debtor's bankruptcy of the debtor, the objecting spouse and their respective spouses; (6) the health, job skills, training, age and education of the debtor, the objecting spouse and their respective spouses; (7) the dependents of the debtor, the objecting spouse and their respective spouses, their ages and any special needs which they may have; (8) any changes in the financial conditions of the debtor and the objecting spouse which may have occurred since the entry of the divorce decree; (9) the amount of debt which has been or will be discharged in the debtor's bankruptcy; (10) whether the objecting creditor is eligible for

- 17 -

relief under the Bankruptcy Code; and (11) whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the § 523(a)(15) issues.  See  In re Smither, 194 B.R. 102, 111 (Bankr. W.D. Ky. 1996).

Having carefully considered the evidence, the court is satisfied that the defendant has not shown by a preponderance of the evidence that the benefit to him of a complete discharge outweighs the detriment that the plaintiff would experience if such a discharge were granted.  The evidence did not show that the defendant's standard of living would fall below that of the plaintiff if the debt is not discharged.  The defendant has been discharged of all of his debts other than the indebtedness involved in this proceeding.  Although the plaintiff currently earns more than the defendant, the plaintiff has two minor children to raise, which significantly increases her current expenses, which are likely to increase as the children grow older.  It further appears that as a practical matter the plaintiff is not in a position to avoid the detrimental consequences of the defendant's failure to pay the marital obligations that he assumed through a bankruptcy filing.  Moreover, there is a serious question in this proceeding regarding the good faith of the defendant.  Notwithstanding his agreement to the contrary, the defendant continued to utilize the credit line at CCB, even using the credit line to purchase the

plaintiff's equity in the home place.  Defendant then continued to utilize the credit line for nearly one year without telling the plaintiff, thereby substantially increasing the very indebtedness that he now seeks to avoid.  While such conduct falls short of outright fraud, it certainly reflects bad faith on the part of the defendant regarding his obligations under the separation agreement and weighs against him in the equitable balancing called for under § 523(a)(15)(B).

In summary, the defendant's evidence was insufficient to show that the benefit to the debtor of discharging his obligation to pay a portion of the debts covered by his agreement outweigh the detrimental consequences to the plaintiff that would result from discharging such obligation.  It follows that, pursuant to § 523(a)(15) of the Bankruptcy Code, the defendant's obligation of $19,350.00 to the plaintiff is not dischargeable.

CONCLUSION

In accordance with the foregoing findings and conclusions, a judgment will be entered contemporaneously with the filing of this memorandum opinion adjudging that the defendant is indebted to plaintiff in the amount of $19,350.00 and that such indebtedness is nondischargeable pursuant to § 523(a)(15) of the Bankruptcy Code.

PARTIES IN INTEREST

John H. Boddie, Esq.
407-D Parkway
Greensboro, NC 27401

Karen Grace Randle
5322 Fox Cove Lane, Apt. Z
Greensboro, NC 27407-5966

William O. Moseley, Esq.
P.O. Box 3486
Greensboro, NC 27402

Michael David Highfill
513 Raleigh Avenue
Carolina Beach, NC 28428